# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2680 | **DATE** | 2/12/2004 |
| **CASE TITLE** | Davis vs. Merrill Lynch Business | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, Merrill Lynch's motion for summary judgment on Counts I and II is granted. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | FEB 13 2004 | 44 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 2/12/2004 date mailed notice | |
| MF | courtroom deputy's initials | Date/time received in central Clerk's Office | MF mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| W.E. DAVIS, DONALD R. DAVIS, and W.E. DAVIS & SONS CONSTRUCTION COMPANY, INC., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No: 03 C 2680 ) |
| MERRILL LYNCH BUSINESS FINANCIAL SERVICES, INC., | ) Judge John W. Darrah ) ) |
| Defendants. | ) |

DOCKETED
FEB 1 3 2004

## MEMORANDUM OPINION AND ORDER

Plaintiffs, W.E. Davis, Donald R. Davis, and W.E. Davis & Sons Construction Company, Inc. ("Davis Construction"), filed suit against Defendant, Merrill Lynch Business Financial Services, Inc. ("Merrill Lynch"), for breaching a financial services agreement. Presently before the Court is Merrill Lynch's Motion for Summary Judgment on Counts I and II. For the following reasons, that motion is Granted.

## LEGAL STANDARD

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court

44

why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that a genuine issue of material fact exists and to show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

## BACKGROUND

The undisputed facts, for the purposes of this motion, taken from the pleadings, and the parties' Local Rule 56.1(a) & (b) statements of material facts (referred to herein as "Pl.'s 56.1" and "Def's 56.1") and exhibits, are as follows.

On or about January 11, 2000, Merrill Lynch entered into a loan agreement with Davis Construction called a Working Capital Management Account[1] Loan and Security Agreement (the

---

[1] The term "WCMA" is used in place of "Working Capital Management Account" throughout the relevant agreements and the parties submissions to this Court.

2

"Loan Agreement"). Def's 56.1 ¶ 5. W.E. Davis and Donald R. Davis executed unconditional guarantees in connection with the Loan Agreement. Def.'s 56.1 ¶ 7. The original term of the Loan Agreement was to expire on January 31, 2001. Def.'s 56.1 ¶ 6.

Davis Construction did not always maintain the requisite loan amount as required by the terms of the Loan Agreement. Pl.'s 56.1 ¶ 5. Merrill Lynch honored checks written by Davis Construction from January 2000 through December 2000, even though the maximum credit line specified in the loan agreement had been exceeded. Pl.'s 56.1 ¶ 7. Under the terms of the Loan Agreement, Merrill Lynch had discretion as to whether it would honor checks written by Davis Construction even where the maximum amount of the loan had been exceeded. Pl.'s 56.1 ¶ 8.

Sometime in late December 2000 or early January 2001, Merrill Lynch determined that Davis Construction had non-bonded accounts less than 90 days old that amounted to $317,961.44. Therefore, according to the terms of the Loan Agreement, the maximum line of credit available to Davis Construction for this account amount was $254,369.15. Def.'s 56.1 ¶ 11. On or around January 9, 2001, Davis Construction had outstanding loan amounts from Merrill Lynch totaling $756,434.00. Pl.'s Resp. to Def.'s 56.1 ¶ 13.

On January 11, 2001, Merrill Lynch notified Davis Construction that it would not honor certain checks made by Davis Construction totaling $85,693.32. Def.'s 56.1 ¶ 14. On January 12, 2001, Merrill Lynch notified Davis Construction that it would not honor certain checks made by Davis Construction totaling $36,091.70. Def.'s 56.1 ¶ 15. On January 17, 2001, Merrill Lynch notified Davis Construction that it would not honor certain checks made by Davis Construction totaling $50,025.83. Def.'s 56.1 ¶ 16. At no time after January 2001 did Davis Construction have access to its account line of credit with Merrill Lynch. Pl.'s 56.1 ¶ 11.

On August 6, 2001 Merrill Lynch and Davis Construction entered into an agreement called the "WCMA Termination and Payment Plan" (the "Original Termination Agreement"). Def.'s 56.1 ¶ 17. On November 12, 2001, Merrill Lynch and Davis Construction agreed to an amendment to the Original Termination Agreement which adjusted the outstanding balance payments that Davis Construction was to pay Merrill Lynch. Def.'s 56.1 ¶ 19. Both the Amended Termination Agreement and the Original Termination Agreement provided that the "[l]oan Documents shall continue in full force and effect upon all of their terms and conditions." Def.'s 56.1 ¶¶ 18, 20.

Section 1.1(r) of the Loan Agreement provides:

"Maximum WCMA Line of Credit" shall mean, as of any date of determination thereof, an amount equal to the less of: (A) $1,000,000 or (B) 80% of Customer's Accounts and Chattel Paper, as shown on its regular books and records (excluding accounts over 90 days old, Accounts arising out of bonded jobs, retainage, directly or indirectly due from any person or entity not domiciled in the United States or from any shareholder, officer, or emplyoee of Customer of any affiliated entity).

Section 2.2(b)(i) of the Loan Agreement states:

Subject to the terms and conditions hereof, during the period from and after the Activation Date to the first to occur of the Maturity Date or the date of termination of the WCMA Line of Credit pursuant to the terms hereof, and in addition to WCMA Loans automatically made to pay accrued interest, as hereafter provided: (i) [Merrill Lynch] will make WCMA Loans to Customer in such amounts as Customer may from time to time request in accordance with the terms hereof, up to an aggregate outstanding amount not to exceed the Maximum WCMA Line of Credit . . . .

Section 2.2(c) of the Loan Agreement provides:

Notwithstanding the foregoing, [Merrill Lynch] shall not be obligated to make any WCMA Loan, and may, without notice refuse to honor any such request by Customer, if at the time of receipt by [Merrill Lynch] of Customer's request: (i) the making of such WCMA Line of Credit would cause the WCMA Maximum Line of Credit to be exceeded . . . . The making by [Merrill Lynch] of any WCMA

4

Loan at a time when any one or more of said conditions shall not have been met shall not in any event be construed as a waiver of said condition or conditions or of any Default, and shall not prevent [Merrill Lynch] at any time thereafter while any condition shall not have been met from refusing to honor any request by Customer for a WCMA Loan.

Section 3.7(a) of the Loan Agreement states, in part:

No failure or delay on the part of [Merrill Lynch] in exercising any right, power, or remedy pursuant to this Loan Agreement or any of the Additional Agreements shall operate as a waiver thereof, or the exercise of any other right, power, or remedy. Neither any waiver of any provision of this Loan Agreement or any pf the Additional Agreements, nor any consent to any departure by Customer therefrom, shall be effective unless the same shall be in writing and signed by [Merrill Lynch].

Lastly, Section 3.7(c) of the Loan Agreement states:

All notices and other communications required or permitted hereunder shall be in writing, and shall be either delivered personally, mailed by postage prepaid certified mail or sent by express overnight courier of by facsimile. Such notices and communications shall be deemed to be given on the date of personal delivery, facsimile transmission, or actual delivery of certified mail, or one business day after delivery to an Express Overnight Courier. Unless otherwise specified in a notice sent or delivered in accordance with the terms thereof, notices and other communication in writing shall be given to the parties hereto at their respective addresses set forth at the beginning of this Loan Agreement, or, in the case of a facsimile transmission, to the parties at their respective regular facsimile telephone number.

## ANALYSIS

Merrill Lynch is seeking summary judgment on both Count I and II of Plaintiffs' Amended Complaint. Count I is a breach of contract claim for unlawfully dishonoring checks in breach of the Loan Agreement, and Count II is a breach of contract claim for wrongful termination of the Loan Agreement.

According to Merrill Lynch, Count I should be dismissed because Davis Construction failed to meet a condition precedent to the Loan Agreement. Specifically, Merrill Lynch argues

5

that it was not obligated to issue any further loans when the total amount Davis Construction owed Merrill Lynch exceeded the maximum line of credit currently available.

A condition precedent is an "act that must be performed or an event that must occur before a contract becomes effective or before one party to an exiting contract is obligated to perform." *Hardin, Rodriguez & Boivin Anesthesiologists, Ltd. v. Paradigm Ins. Co.*, 962 F.2d 628, 633 (7th Cir. 1992). "Where a condition precedent is not satisfied, no breach of contract for failure to perform occurs." *Quantum Mgmt. Group, Ltd. v. Univ. of Chicago Hosps.*, 283 F.3d 901, 906 (7th Cir. 2002).

Here, the Loan Agreement expressly states, in section 2.2(c), that Merrill Lynch may refuse to honor any request for funds by Davis Construction that would cause the maximum line of credit to be exceeded. At the time Davis Construction made its request for funds, the maximum line of credit, in accordance with section 1.1(r) of the Loan Agreement, was $254,369.15, and Davis Construction's outstanding loan amounts was $756,434.00. Plaintiffs have failed to present any affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate to the contrary.

Davis Construction next argues that section 2.2(c) only applies when the request for funds would *cause* the maximum line of credit to be exceeded, and that the maximum line of credit was already exceeded when the January requests for funds were not honored (Court's emphasis). However, section 2.2(b)(i) of the Loan Agreement states that Merrill Lynch may make loans to Davis Construction "up to an aggregate outstanding amount not to exceed" the maximum line of credit. Section 2.2(b)(i), taken together with section 2.2(c), allow Merrill Lynch to refuse to honor any request by Davis Construction for additional funds when the maximum line of credit

6

was already exceeded. Accordingly, there is no genuine issue of material fact that Davis Construction failed to satisfy a condition precedent to the Loan Agreement; and Merrill Lynch was not obligated to honor the three January requests for funds made by Davis Construction.

Davis Construction also contends that because Merrill Lynch exercised its discretion under section 2.2(c) to honor checks in excess of the maximum line of credit, Merrill Lynch had an implied duty of good faith and fair dealing to exercise its discretion for the three January requests for funds. *See Beraha v. Baxter Healthcare Corp.*, 956 F.2d 1436, 1443 (7th Cir. 1992).

However, under Illinois law, non-waiver clauses are enforceable. *Monarch Coaches, Inc. v. ITT Indus. Credit*, 818 F.2d 11, 13 (7th Cir. 1987). Further, although a good faith and fair dealing provision is implied in every Illinois contract, it "has never been an independent source of duties for the parties to the contract." Principles of good faith fill a gap when a contract is silent, but "[t]hey do not block use of terms that actually appear in the contract." *F.D.I.C. v. Rayman*, 117 F.3d 994, 1000 (7th Cir. 1997) (citation omitted).

Here, the contract is not silent. Section 2.2(c) expressly states that Merrill Lynch may provide funding to Davis Construction even if the maximum credit line has been exceeded, without waiving its right to refuse to honor any future request by Davis Construction if a condition precedent has not been met. Moreover, section 3.7(a) of the Loan Agreement provides that any failure of Merrill Lynch in exercising its rights under the Loan Agreement shall not operate as a waiver of that right. Therefore, no genuine issue of material fact exists showing that Merrill Lynch either waived its rights under the Loan Agreement or was required to honor the January requests for funding from Davis Construction under an implied duty of good faith and fair dealing.

Davis Construction further claims that Merrill Lynch breached its duty of good faith by canceling the contract after learning W.E. Davis lost his sight and became legally blind. However, a party's motivation for enforcing its contractual rights is immaterial. *See Original Great Am. Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 280 (7th Cir. 1992); *In re Prima Co.*, 98 F.2d 952, 965 (7th Cir. 1938); *Herzog v. Leighton Holdings*, 239 B.R. 497, 508 (N.D. Ill. 1999). In this case, Merrill Lynch was entitled, according to section 2.2(c) of the Loan Agreement, to refuse to honor Davis Construction's request for funding when, as here, the maximum line of credit would be exceeded. Thus, whether Merrill Lynch refused to honor Davis Construction's requests because W.E. Davis was blind is irrelevant.

Davis Construction asserts that Merrill Lynch, by consistently honoring checks written by Davis Construction that exceeded the maximum credit limit for almost a year, impliedly waived its right to refuse additional loan requests. In support of this proposition, Davis Construction cites an unpublished opinion, *Strauss v. Sullivan*, 991 F.2d 800, 1993 WL 118068 (7th Cir. 1993) ("*Strauss*"). Under the Circuit Rule of the United States Courts of Appeals for the Seventh Circuit 53(b)(2)(iv)(a), the *Strauss* opinion may not be cited as precedent.

Parties to a contract may not lull each other into a false assurance that strict compliance with a contractual duty will not be required and then sue for non-compliance. *In re Krueger*, 192 F.3d 733, 740 n.3 (7th Cir. 1999). In this case, Merrill Lynch did not lull Davis Construction into a false assurance and then sue Davis Construction for exceeding its maximum line of credit; instead, Davis Construction sued Merrill Lynch for breaching the Loan Agreement. Furthermore, by the express terms of section 2.2(c) of the Loan Agreement, Merrill Lynch reserved the right to strictly enforce the terms of the contract. Accordingly, there is no genuine issue of material fact

8

as to whether Merrill Lynch impliedly waived its right to refuse to honor additional loan requests by Davis Constriction.

Plaintiffs further contend that Merrill Lynch never provided notice to Davis Construction that a change in the maximum line in credit occurred. Specifically, Plaintiffs claim that Davis Construction never received a letter, dated January 9, 2000, that was sent by Merrill Lynch indicating a change in the maximum line of credit. Thus, Davis Construction argues it was not properly notified, as stated under section 3.7(a) of the Loan Agreement.

However, the express terms of section 2.2(c) of the Loan Agreement state that Merrill Lynch may refuse to honor a request for funding from Davis Construction without giving notice. A lender is not required to "give more advance notice of termination than its contract requires." *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1358 (7th Cir. 1990). Therefore, whether Davis Construction was notified in accordance with section 3.7(a) of the Loan agreement of a change in the maximum line of credit is irrelevant.

According to Plaintiffs, the Loan Agreement was wrongfully terminated before its January 31, 2001 expiration date. Specifically, Plaintiffs argue that because the only purpose of the Loan Agreement was to provide funding to for Davis Construction and Merrill Lynch failed to provide the requested funding in January of 2001, Merrill Lynch terminated the line of credit and the Loan Agreement.

The Loan Agreement, however, encompassed more than the line of credit. The Loan Agreement contains other provisions relating to the repayment of funds and Merrill Lynch's rights to posted collateral. Moreover, as discussed above, Merrill Lynch did not wrongfully terminate the Loan Agreement by dishonoring Davis Construction's request for funding because

9

Merrill Lynch was acting within its rights, as defined in the Loan Agreement. Finally, both the Original and Amended Termination Agreements stated that the Loan Agreement shall remain in full force and effect. Plaintiffs have not presented any affidavits, depositions, answers to interrogatories, or admissions to the contrary. Therefore, Plaintiffs have failed to demonstrate that a genuine issue of material fact exists showing that the Loan Agreement was wrongfully terminated.

## CONCLUSION

For the foregoing reasons, Merrill Lynch's Motion for Summary Judgment on Counts I and II is granted.

Dated: February 12, 2004

JOHN W. DARRAH
United States District Judge